**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| First Star Logistics, LLC., | ) |
| Plaintiff, | ) Case No.: 1:18-cv-00202 |
| | ) Judge Michael R. Barrett |
| Raul Ronald Victores, et al. | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Leave to File a First Amended Complaint (Doc. 13) and Plaintiff's Motion for Summary Judgment. (Doc. 22).

Also pending before the Court are Plaintiff's Motion for a Temporary Restraining Order (Doc. 3), Defendant American Ridgeback, LLC's ("Ridgeback") Motion to Dismiss (Doc. 4), and Defendant Bullhead Logistics, LLC's ("Bullhead") Motion for a More Definite Statement (Doc. 8).

### I. MOTION TO AMEND

Federal Rule of Civil Procedure 15 provides that, once the time period for amending a pleading as a matter of right has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave" and "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). When deciding whether to grant such a motion, the court should consider "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure

deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 458-59 (6th Cir. 2001) (quoting *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989)). "Delay by itself is not sufficient reason to deny a motion to amend" and "[n]otice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Id.*

Plaintiff filed its Motion to Amend early in the proceedings and shortly after Defendants filed their Motion to Dismiss and Motion for a More Definite Statement, and Plaintiff did so in an effort to address the allegations in the Motion to Dismiss. (Doc. 14). Moreover, Plaintiff's counsel discussed its Motion to Amend with Defendants' former counsel prior to his withdrawal as attorney of record. (*Id.*). For good cause shown, and based on the facts of this case, Plaintiff's Motion for Leave to File a First Amended Complaint (Doc. 13) is GRANTED. The Court will consider Plaintiff's First Amended Complaint. (Doc. 12).

## II. MOTION FOR SUMMARY JUDGMENT

### a. Procedural Background

Plaintiff originally brought this action in the Hamilton County Court of Common Pleas, Hamilton County, Ohio. (Doc. 1). Defendant Raul Ronald Victores ("Victores") removed the matter to the United States District Court for the Southern District of Ohio Western Division. (*Id.*). After filing Defendant Ridgeback's Motion to Dismiss (Doc. 4) and Defendant Bullhead's Motion for a More Definite Statement (Doc. 8), counsel for all three Defendants moved to withdraw as the attorney of record for Defendants. (Doc. 15). The

Court granted Defendants' counsel's motion after a hearing on the matter. (Docs. 16, 17). Thereafter, the Court held a show cause hearing regarding Defendants' efforts, if any, to retain new counsel. Defendants made no appearance at that hearing and remain unrepresented. Plaintiff filed its Motion for Summary Judgment. (Doc. 22). Defendants have not filed an opposition.

### b. Factual Background

Defendants have not disputed the following facts found in Plaintiff's First Amended Complaint and exhibits attached to Plaintiff's Motion for Summary Judgment (Docs. 12, 22-1). Plaintiff is a property broker, or freight broker, registered with the Federal Motor Carrier Safety Administration. In short, Plaintiff is a third-party logistics company that provides freight transportation solutions to customers. Plaintiff does not deliver goods itself; rather, it contracts with sales agents to deliver goods and provides all administrative services for those sales agents.

Defendants Victores and Bullhead[1] were such sales agents. Defendant Victores entered into a Sales Agent Agreement with Plaintiff on August 12, 2013 and Defendant Bullhead entered into a Sales Agent Agreement, executed by Victores, with Plaintiff on May 8, 2017. Attached to those Sales Agent Agreements were Confidentiality, Non-Solicitation and Non-Recruitment Agreements.

Pursuant to the Sales Agent Agreements, Plaintiff contracted with Defendants Victores and Bullhead as agents for a variety of services including, among others, providing and managing motor carrier brokerage services and a broad range of transportation services. In particular, Defendants Victores and Bullhead agreed:

---

[1] Defendant Bullhead is Defendant Victores' company and Victores and his wife were both members of Bullhead at all times relevant to this matter.

- to follow the rules and regulations of Plaintiff's Policy and Procedure Manual;
- to obtain credit approval from Plaintiff before booking transportation services for a customer using Plaintiff's resources;
- that all decisions regarding credit approval were solely within Plaintiff's discretion;
- that Victores and Bullhead had no authority to request or accept payments for services from customers on Plaintiff's behalf;
- that Victores and Bullhead would be liable for any accounts receivable that were uncollected as a result of the agent's negligence, breach of the Agreement(s) or failure to adhere to Plaintiff's policies and procedures; and
- that they would be liable to refund Plaintiff for all commissions paid for which Plaintiff did not ultimately collected from a customer.

Pursuant to the Confidentiality, Non-Solicitation and Non-Recruitment Agreements, Defendants Victores and Bullhead agreed that:

- the Non-Solicitation Agreements would apply for the duration of both Sales Agent Agreements and for a period of 365 days after the termination of the Sales Agent Agreements;
- Victores and Bullhead would receive certain confidential information from Plaintiff as part of their business relationship which included the identity of Plaintiff's customers and suppliers and the prices that Plaintiff charged for its services;
    - such information would be considered the "trade secrets" of plaintiff and Victores and Bullhead would not disclose or improperly use such information;
- Victores and Bullhead would not solicit Plaintiff's customers—present or prospective;
- the solicitation prohibition applied to Victores' and Bullheads' owners employees, officers, directors and representatives; and
- if the solicitation prohibition was breached, Plaintiff would suffer irreparable harm and could seek injunctive relief, fees and costs for bringing an action to remedy a breach, and/or pecuniary damages.

In August 2017, Defendant Victores' wife formed Defendant Ridgeback which operated as a federally licensed property broker. Defendant Ridgeback, as a freight broker, became a direct competitor of Plaintiff.

In December 2017, Plaintiff audited Defendants Victors and Bullhead and, in that process, discovered that Defendants had entered loads, connected with eight accounts, without obtaining credit approval from Plaintiff and received commissions from Plaintiff for the transportation of those loads. Moreover, Plaintiff billed each of the eight accounts

4

for the transportation services that Defendants Victores and Bullhead arranged and those transportation charges totaled $130,138.98. None of the accounts paid Plaintiff; rather, accounts paid Defendants Victores and Bullhead. Defendants Victores and Bullhead, thus, kept the commission they received from Plaintiff and the payments from the eight accounts.

Also in December 2017, Plaintiff discovered that Defendant Victores was both working as a sales agent for Defendant Ridgeback and diverting accounts away from Plaintiff to Defendant Ridgeback. For example, Defendant Victores, using confidential information he had access to by virtue of his Sales Agent Agreement with Plaintiff, diverted Plaintiff's client, Holthouse Farms, to Defendant Ridgeback. Plaintiff terminated Defendant Victores' and Bullhead's Sales Agent Agreements as a result.

Plaintiff seeks summary judgment against Defendants Victores and Bullhead regarding its claims for breach of contract and tortious interference with contractual or business relations. (Doc. 22 at PageID 483). Plaintiff requests a judgment against Defendants Victores and Bullhead in the amount of $130,138.98 and injunctive relief against all three Defendants. (*Id.* at PageID 484).

### c. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if its resolution affects the outcome of the suit. *Id.* On summary judgment, a court must view the evidence and draw all

reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 248-49.

However, even where a motion for summary judgment is unopposed, the court must review the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists. *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 629 (6th Cir. 2014). *Accord: Smith v. Hudson*, 600 F.2d 60, 64 (6th Cir. 1979) ("A party is never required to respond to a motion for summary judgment in order to prevail since the burden of establishing the nonexistence of a material factual dispute always rests with the movant."). *Cf.* S.D. Ohio Civ. Rule 7.2(a)(2) ("Failure to file a memorandum in opposition may result in the granting of any motion that would not result directly in entry of final judgment or an award of attorneys' fees."). The Court will not, however, "sua sponte comb the record" from the nonmoving party's perspective. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 410 (6th Cir. 1982). Instead, the court may reasonably rely on the moving party's "unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are 'uncontroverted.'" *Id.* If such evidence supports a conclusion that there is no genuine issue of material fact, the court should determine that the moving party is entitled to judgment as a matter of law. *Id.*

## d. Breach of Contract

As the Court's jurisdiction is based on diversity of citizenship, the Court must apply the substantive law of the forum state. *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). To prove a breach of contract under Ohio law, Plaintiff must establish: (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff. *Samadder v. DMF of Ohio, Inc.*, 154 Ohio App.3d 770, 778, 798 N.E.2d 1141, 1147 (Ohio App. 2003); *see Leisure Sys., Inc. v. Roundup, LLC*, No. 1:11-CV-384, 2012 WL 5378302, at *6 (S.D. Ohio Oct. 31, 2012); *see also Spectrum Benefit Options, Inc. v. Med. Mut. of Ohio*, 174 Ohio App. 3d 29, 40, 880 N.E.2d 926, 934 ("A breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the nonbreaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the nonbreaching party suffered damages as a result of the breach.").

Plaintiff contends that Defendants Victores and Bullhead each breached their Sales Agent Agreements and Confidentiality, Non-Solicitation and Non-Recruitment Agreements. The Sales Agent Agreements and Confidentiality, Non-Solicitation and Non-Recruitment Agreements are binding agreements. (Doc. 22-1 at PageID 494-508, 511-527). Pursuant to the terms of those agreements, and due to Defendant Victores' and Bullhead's failure to check with Plaintiff before extending credit to the eight accounts described above, collection of payment from those eight accounts without forwarding payment to Plaintiff, and collection of commissions for those eight accounts from Plaintiff, Plaintiff has suffered a financial loss, in the amount of $130,138.98, for which Defendants Victores and Bullhead are responsible. The Court finds that there is no genuine dispute

7

as to any material fact and Plaintiff is entitled to judgment as a matter of law on its claim of breach of contract.

### e. Tortious Interference

"Ohio recognizes a claim of tortious interference with contractual (or business) relations." *Leisure Sys., Inc.*, 2012 WL 5378302, at *29 (citing *Dryden v. Cincinnati Bell Tel. Co.,* 135 Ohio App.3d 394, 400, 734 N.E.2d 409, 413 (Ohio Ct. App. 1999)). "The basic principle underlying a claim of tortious interference is that when someone acting without privilege, induces or purposely causes a third party to terminate a business relationship with another, then that person should be held liable for the harm resulting from the terminated relationship." *Id.* (citing *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 714, 651 N.E.2d 1283 (1995)). "In Ohio, the elements of tortious interference with contract are: '(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages.'" *Enterprises v. Michael Joaillier, Inc.*, 207 F. Supp. 3d 799, 807-08 (S.D. Ohio 2016) (quoting *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St. 3d 171, 707 N.E.2d 853, 858 (1999)).

Before December 2017, Plaintiff had a business relationship with Holthouse Farms. Defendant Victores was aware of Plaintiff's relationship with Holthouse Farms. In December 2017, however, Defendant Victores, using confidential information he had access to by virtue of his Sales Agent Agreement with Plaintiff, diverted Holthouse Farms' business to Defendant Ridgeback. There was no justification for these actions. Defendant's actions resulted in damages to Plaintiff in the loss of a client and the freight

charges for the prior services that Holthouse Farms paid to Defendants instead of Plaintiff. The Court finds that there is no genuine dispute as to any material fact and Plaintiff is entitled to summary judgment regarding its claim of tortious interference with business relations against Defendant Victores.

### f. Injunctive Relief

Plaintiff requests that the Court issue:

- a permanent injunction against Defendants Victores and Bullhead from improperly disclosing or using Plaintiff's Confidential Information;

- a permanent injunction against Defendant Ridgeback enjoining it from using or disclosing Plaintiff's Confidential Information and from interfering with Plaintiff's contractual relationship with Defendants Victores and Bullhead;

- an injunction lasting twelve (12) months, from the date of this Order, enjoining Defendants Victores and Bullhead from soliciting or servicing Plaintiff's customers;

- an injunction lasting 12 months, from the date of this Order, enjoining Defendant Victores from serving as an employee or sales agent of Defendant Ridgeback; and

- an injunction lasting 12 months, from the date of this Order, enjoining Defendant Ridgeback from soliciting or servicing Plaintiff's clients.

(Doc. 22).

A plaintiff seeking a permanent injunction must demonstrate (1) that it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) it is in the public's interest to issue the injunction. *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (citing *eBay Inc., et al. v. MercExchange, LLC*, 126 S.Ct. 1837, 1839 (2006)); *see Eller Media Co. v. City of Cleveland, Ohio*, 161 F.Supp.2d 796, 807, n.4 (N.D. Ohio 2001) (noting that the standard for issuance of a permanent injunction is essentially the same as that for the issuance of a preliminary injunction except that the plaintiff must

9

show actual success on the merits) (citing *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987)).

In light of the Court's findings that Plaintiff is entitled to summary judgment on its claims for breach of contract and tortious interference with a business relationship, Plaintiff meets the first element. Regarding the second element, Plaintiff has established that legal remedies are not sufficient to compensate its injuries, as it has shown that it has lost customers due to Defendants' violation of the Sales Agent Agreements and Confidentiality, Non-Solicitation and Non-Recruitment Agreements. "Allowing Defendants to continue to convert Plaintiff['s] clients in violation of the[se agreements] in place would exacerbate the irreparable harm already done to Plaintiff[]." *Dealer Specialties, Inc. v. Car Data 24/7, Inc.*, No. 1:15-CV-170, 2016 WL 5341797, at *8 (S.D. Ohio Sept. 23, 2016). The third element is satisfied, as Plaintiff is asking the Court to hold Defendants Victores and Bullhead to the terms of their Sales Agent Agreements and Confidentiality, Non-Solicitation and Non-Recruitment Agreements and to protect Plaintiff's confidential information from all Defendants. Likewise, the fourth element is satisfied as "[p]reserving the sanctity of contractual relations and preventing unfair competition have traditionally been in the public interest." *Blakeman's Valley Office Equip., Inc. v. Bierdeman*, 2003-Ohio-1074, ¶ 39, 152 Ohio App. 3d 86, 93, 786 N.E.2d 914, 920. "Defendants may not benefit from their breach of contract." *Dealer Specialties, Inc.*, 2016 WL 5341797, at *8. Accordingly, the Court will grant Plaintiff's requested injunctive relief.

## III. CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that:

1. Plaintiff's Motion for Leave to File a First Amended Complaint (Doc. 13) is **GRANTED** and Defendant Ridgeback's Motion to Dismiss (Doc. 4) and Defendant Bullhead's Motion for a More Definite Statement (Doc. 8) are **DENIED as moot**.

2. Plaintiff's Motion for Summary Judgment (Doc. 22) is **GRANTED** and the Clerk is **DIRECTED** to enter judgment in favor of Plaintiff against Defendants Victores and Bullhead in the amount of $130,138.98.[2]

3. Defendants Victores and Bullhead are permanently **RESTRAINED AND ENJOINED** from improperly disclosing or using Plaintiff's Confidential Information.

4. Defendant Ridgeback is permanently **RESTRAINED AND ENJOINED** from using or disclosing Plaintiff's Confidential Information and from interfering with Plaintiff's contractual relationship with Defendants Victores and Bullhead.

5. Defendants Victores and Bullhead are **RESRAINED AND ENJOINED** for 12 months, from the date of this Order, from soliciting or servicing Plaintiff's customers.

6. Defendant Victores is **RESRAINED AND ENJOINED** for 12 months, from the date of this Order, from serving as an employee or sales agent of Defendant Ridgeback.

7. Defendant Ridgeback is **RESRAINED AND ENJOINED** for 12 months, from the date of this Order, from soliciting or servicing Plaintiff's clients.

8. Plaintiff's Motion for a Temporary Restraining Order (Doc. 3) is **DENIED as moot.**

**IT IS SO ORDERED.**

                                                 s/Michael R. Barrett
                                                 Michael R. Barrett, Judge
                                                 United States District Court

---

[2] Defendants Victores and Bullhead are joint and severally liable.